EXHIBIT 1

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES DAVID O'BRIEN,<br><br>Defendant. | Case No. 1:21-cv-09575 |

**Expert Report of Evgeny (Eugene) Orlov, Ph.D.**
**August 5, 2022**

## Table of Contents

I. Qualifications. .......... 2

II. Case Background, Assignment, and Summary of Opinions. .......... 3

*A. Case Background* .......... 3

*B. Assignment* .......... 3

*C. Summary of Opinions* .......... 4

III. O'Brien's Stock Trading between December 2015 and May 2021 is Consistent with Coordinated Trading Behavior. .......... 5

*A. Coordinated Trading Patterns and Events* .......... 5

*B. Examples of O'Brien's Coordinated Trading Events* .......... 8

*i. Example 1: Trading in Silicon Laboratories Inc. on September 29, 2016* .......... 8

*ii. Example 2: Trading in Lam Research Corporation on October 21, 2016* .......... 9

*iii. Example 3: Trading in Primoris Services Corp Corporation on January 27, 2017* .......... 11

*C. Helper and Winner Accounts Have Different Trading Patterns* .......... 13

IV. O'Brien Received $6.1 Million in Profits from Coordinated Trading Events between December 2015 and May 2021. .......... 14

Exhibits .......... 16

## I. Qualifications.

1. I am a Financial Economist with the Office of Litigation Economics in the Division of Economic and Risk Analysis of the Securities and Exchange Commission ("SEC") at its Los Angeles Regional Office. In this role I provide financial, economic, and statistical analyses to assist the Commission in its investigations. I joined the SEC in 2018. Prior to joining the SEC in 2018, I was employed for approximately thirteen years at Compass Lexecon, where I consulted on matters involving antitrust and financial economics. As part of my role at the SEC, I frequently analyze and summarize data from large datasets to detect trading patterns that violate securities laws.

2. I have a Ph.D. in economics from Northwestern University with specializations in Applied Economics and Industrial Organization, and a Master's degree in economics from New Economic School in Moscow, Russia. I have published academic articles in the *Review of Economics and Statistics*, *American Economic Journal: Micro*, and other journals. I have presented my research at major academic conferences, and I have also served as a referee for top academic journals. I have taught macroeconomics at the undergraduate level at Northwestern University. My curriculum vitae is included as Appendix A.

3. In the preparation of this expert report, I have been assisted by SEC economists working under my direction. I receive a salary for my work at the SEC and that compensation depends neither on my participation as an expert in this matter, nor on the outcome of the matter.

## II. Case Background, Assignment, and Summary of Opinions.

### *A. Case Background*

4. The SEC alleges that James David O'Brien ("O'Brien") engaged in a fraudulent market manipulation scheme through coordinated stock trading across multiple accounts maintained in his or his wife's name at different brokerage firms.[1] Through placing small orders in some of these accounts, O'Brien created the false appearance of interest and trading activity in particular stocks. These orders affected the National Best Bid and Offer ("NBBO")[2] and were intended to induce other market participants to fill large orders in O'Brien's other accounts at favorable prices.[3] That is, the placing of small orders in some accounts on one side of the market allowed him to execute large orders on the other side of the market in other accounts, at artificially deflated prices for purchases or inflated prices for sales, and generate profits in those accounts.[4]

### *B. Assignment*

5. I have been asked to evaluate and analyze O'Brien's stock trading activity and examine the incidence of coordinated trading activity across his accounts as alleged in the complaint.[5] Specifically, I have been asked to identify instances of coordinated trading across the accounts, describe trading patterns associated with coordinated trading, and calculate profits associated with coordinated trading. I was also asked to compare these profits with overall profits from O'Brien's stock trading activity.

---

[1] Complaint, Securities and Exchange Commission vs. James David O'Brien, United States District Court, Southern District of New York, Case 1:21-cv-09575 ("Complaint"), ¶1.
[2] The NBBO represents the highest bid and the lowest ask (offered) price quotations across all exchanges that facilitate trading in the stock. It is continuously updated based on changes in the available quotations.
[3] Complaint, ¶30.
[4] Complaint, ¶4.
[5] I use the term "trading activity" to refer to the placement of orders and their corresponding executions or cancelations.

6. I received and analyzed blotter data from 22 brokerage firms.[6] The data and materials I considered in forming the opinions set forth in this report are listed in Appendix B.

*C. Summary of Opinions*

7. Based on my analysis, I conclude that:

a. The definition of a coordinated trading event in the Complaint[7] is a suitable approach to evaluate whether O'Brien's stock trading activity is consistent with coordinated trading.

b. Based on my analysis of the Coordinated Trading Events as defined in this report,[8] O'Brien's stock trading activity is consistent with coordinated trading during the time period between December 2015 and May 2021 (the "Coordinated Trading Period").[9]

c. To conduct coordinated trading during this time period, O'Brien used 24 brokerage accounts in his or his wife's name at 18 brokerage firms.[10]

d. During the Coordinated Trading Period, O'Brien used $11.3 billion to purchase securities to carry out around 19,300 Coordinated Trading Events that generated approximately $6.1 million in net profits.[11]

---

[6] Some brokerage firms provided data for the same accounts. After I remove duplicate data sources from my analysis, I end up with blotter data from 19 brokerage firms.
[7] Complaint, ¶17.
[8] For my analysis, I have defined the term "Coordinated Trading Event" or "Event" following the definition of a coordinated trading event from the Complaint with minor variations. The exact definition used in this report and the reasons for the variations are provided below and in Appendix C.
[9] While O'Brien traded in other types of securities as well, such as options and warrants, my report focuses on his trading in stocks. O'Brien's stock trading was mostly day trading: out of total amount used to purchase securities during the Coordinated Trading Period, almost 98% corresponded to trades of securities that were purchased and sold within a day. Therefore, my analysis focuses on day trading in stocks by O'Brien.
[10] I understand from the Complaint that brokerage firms repeatedly closed O'Brien's accounts due to concerns about his trading strategies, and that O'Brien would then open accounts at different brokerage firms. (See Complaint, ¶7.) Based on the provided data, I find that at any point of time between December 2015 and May 2021, O'Brien actively traded stocks at up to seven brokerage firms.
[11] I exclude fees and commissions from profit calculations.

e. In total during this time period, O'Brien used $17.5 billion to purchase securities and earned $6.4 million in net profits. Thus, while Coordinated Trading Events accounted for 64.3% of the overall dollar amount used to purchase securities, they accounted for 95.4% of O'Brien's net profits.

8. The opinions presented in this report are a result of the information available to me as of the report date. I reserve the right to supplement the opinions and analyses described in this report depending on any information or materials I may be provided later.

## III. O'Brien's Stock Trading between December 2015 and May 2021 is Consistent with Coordinated Trading Behavior.

### *A. Coordinated Trading Patterns and Events*

9. The SEC alleges that O'Brien engaged in coordinated trading of stocks in multiple accounts at separate brokerage firms with the intent to induce other market participants to fill O'Brien's orders at artificially low or artificially high prices.[12] In this report, I employ the terms used in the Complaint and define two types of accounts: "helper" accounts that place relatively small orders in securities at one brokerage firm, and "winner" accounts that nearly simultaneously place relatively large orders in the same securities at another brokerage firm.[13]

10. I consider the following general types of trading strategies that are consistent with coordinated trading behavior:[14]

---

[12] Complaint, ¶¶1, 3.
[13] Complaint, ¶¶2. I discuss these definitions in more detail below.
[14] Each of the strategies may involve more than one helper and/or more than one winner accounts. The list of strategies is not exhaustive of all the strategies that are consistent with coordinated trading behavior and that I include in my analysis.

- The winner account accumulates a large long position in a stock. Subsequently, the helper account places a series of smaller buy orders. The winner account sells its position, followed by the helper account liquidating any remaining positions.[15]
- The winner account accumulates a large short position in a stock. Subsequently, the helper account places a series of smaller short-sell orders. The winner account closes its short position, followed by the helper account liquidating any remaining positions.
- The helper account places a series of small sell orders in a stock. Subsequently, the winner account acquires a large long position. The helper account then places a series of small buy orders, at times in an aggregate amount exceeding the helper account's originally accumulated short position. The winner account sells its position, followed by the helper account liquidating any remaining positions.
- The helper account places a series of small buy orders in a stock. Subsequently, the winner account acquires a large short position. The helper account then places a series of small sell orders, at times in an aggregate amount exceeding the helper account's originally accumulated long position. The winner account closes its position, followed by the helper account liquidating any remaining positions.

11. I have reviewed the definition of "coordinated trading event" provided in the Complaint,[16] and I agree that it is an appropriate way to evaluate potential coordinated trading activity by O'Brien. For my analysis in this report, I use the following slightly modified definition of "Coordinated Trading Event:"[17]

---

[15] The positions at helper accounts could be liquidated either by selling already purchased stocks or by cancelling limit orders that have not been filled yet.
[16] Complaint, ¶17.
[17] I discuss the differences between my definition and the one provided in the Complaint in Appendix C.

- Two or more accounts at different brokerage firms trade and hold positions in the same exchange-traded stock, on the same day, and during the same period of time;
- The event starts when the first account places an order and ends when all of the involved accounts close out their positions;
- At least one of the accounts behaves as a winner account—an account that has an average order size greater than or equal to 1,000 shares;[18]
- At least one of the involved accounts behaves as a helper account—an account that has an average order size of less than 500 shares, for orders preceding the winner account's orders,[19] and is held at a different brokerage firm than the winner account; and
- There is at least one instance during the coordinated trading event where the direction of a transaction or series of transactions in the helper account is in the opposite direction from the immediately following transaction(s) in the winner account, and the winning account transaction does not lag the last of the helper account's transactions by more than 30 seconds.[20]

12. Applying this definition to the trading data, I identify 19,308 Events, involving 2,248 stocks and transactions involving almost 300 million shares purchased.

13. Next, I describe three examples of O'Brien's trading activity that illustrate his coordinated trading.

---

[18] I have reviewed the trading activity and have concluded that the Complaint's thresholds are an appropriate way to identify these accounts. I have also run my analyses using different thresholds, and have drawn qualitatively similar conclusions. I therefore conclude that these thresholds to define winner and helper accounts are reasonable.
[19] I require the overall average order size in a helper account not to exceed 1,000 shares.
[20] For brokerage firms that provided order times or execution times with the precision up to a minute, the time lag threshold is 60 seconds.

*B. Examples of O'Brien's Coordinated Trading Events*

*i. Example 1: Trading in Silicon Laboratories Inc. on September 29, 2016*

14. Exhibit 1A shows that in a 38-second period from 9:44:44 AM to 9:45:22 AM, two accounts controlled by O'Brien traded in common stock of Silicon Laboratories Inc. (stock symbol "SLAB") in a Coordinated Trading Event.[21] The trading resulted in a net profit of approximately $5,458. Trading during this 38-second period can be broken into five groups of trades and illustrates the execution of O'Brien's coordinated trading activity:

- **Helper account places sell orders:** The event begins with O'Brien submitting eight sell limit orders in the Brokerage Firm A helper account for 100 shares each within the 18-second period from 9:44:44 to 9:45:02. Each of these orders is placed at a lower or the same limit price as the previous one, beginning at $57.55 and ending at $57.01. Half of the eight helper account orders are executed in full at an average price of $57.06. These trades suggest to the market a negative interest in the stock, putting downward pressure on the price.
- **Winner account places buy orders to accumulate a position:** After the helper account has placed five of the eight sell limit orders, O'Brien places and executes three market orders for 2,700 shares each to purchase a total of 8,100 shares in the winner account held at Brokerage Firm B. The orders are executed between 9:44:54 and 9:45:04 for an average of $57.07 per share.

[21] This example is detailed in the Appendix A of the Complaint. Appendix B of the Complaint presents an additional example of a coordinated trading event.

- **Reversal in helper account – Helper account places buy orders:** Three seconds after the winner account has accumulated its 8,100 share position, the helper account places a 300-share buy market order followed by 11 buy limit orders between 9:45:08 and 9:45:12, for 100 shares each. The limit order prices for these orders begin at $57.38 and end at $57.65. Through these trades, the helper account purchases 720 shares at an average price of $57.44. In combination with the buy orders in the winner account, these orders suggest to the market a positive interest in the stock, putting upward pressure on the stock price.
- **Winner account places sell orders to close out its position:** Starting two seconds after the helper account has placed its final buy limit order, the winner account places three market sell orders for 2,700 shares each, executing all 8,100 shares at a price of $57.76 and netting $5,591 for the winner account.
- **Helper account places sell orders to close out its position:** Two seconds after the winner account has closed out its position, the helper account starts closing its own position for a total loss of $133.

*ii. Example 2: Trading in Lam Research Corporation on October 21, 2016*

15. Exhibit 1B shows that in a 27-second period from 9:56:51 AM to 9:57:18 AM, two accounts controlled by O'Brien traded in common stock of Lam Research Corporation (stock symbol "LRCX") in a Coordinated Trading Event. The trading resulted in a net profit of approximately $2,387. Trading during this 27-second period can be broken into five groups of trades and illustrates the execution of O'Brien's coordinated trading activity:

- **Helper account places buy orders:** The event begins with O'Brien submitting five buy limit orders in the Brokerage Firm A helper account for 100 shares each, entered in a 3-second period from 9:56:51 to 9:56:54. The orders are placed at limit prices between $98.58 and $98.61. All order are executed in full at an average price of $98.60. These trades suggest to the market a positive interest in the stock putting upward pressure on stock price.
- **Winner account places sell orders to accumulate short position:** Three seconds after the helper account has placed the buy limit orders, O'Brien places and executes three market orders for 4,800 shares each to purchase a total of 14,400 shares in the winner account held at Brokerage Firm B. The orders are executed between 9:56:57 and 9:57:01 for an average of $98.52 per share.
- **Reversal in helper account – Helper account places sell orders:** Three seconds after the winner account has accumulated its 14,400 share position, the helper account places 10 sell limit orders between 9:57:04 and 9:57:08 for 100 shares each. Each of these limit orders is at a lower or the same limit price as the previous one, beginning at $98.41 and ending at $98.31. Through these trades, the helper account sells 900 shares at an average price of $98.31. In combination with the sell orders in the winner account, these orders suggest to the market a negative interest in the stock putting downward pressure on the stock price.

- **Winner account places buy orders to close out its position:** Starting two seconds after the helper account has placed its final limit sell order, the winner account places three buy market orders for 4,800 shares each, purchasing a total of 14,400 shares at an average price of $98.34 and netting $2,580 for the winner account.
- **Helper account places buy orders to close out its position:** Five seconds after the winner account has closed out its position, the helper account closes its own position for a total loss of $194.

*iii. Example 3: Trading in Primoris Services Corp Corporation on January 27, 2017*

16. Exhibit 1C shows that in a 94-second period from 9:30:16 AM to 9:31:50 AM, two accounts controlled by O'Brien traded in common stock of Primoris Services Corp. (stock symbol "PRIM") in a Coordinated Trading Event. The trading resulted in a net profit of approximately $1,793. Trading during this 94-second period can be broken into five groups of trades and illustrates the execution of O'Brien's coordinated trading activity:

- **Helper account places sell orders:** The event begins with O'Brien submitting three sell limit orders in the Brokerage Firm C helper account for 100 shares each, entered in a 16-second period from 9:30:16 to 9:30:32. The three orders are placed at declining limit prices starting at $25.00 and ending at $24.69. These trades suggest to the market a negative interest in the stock, putting downward pressure on stock price. Two of the three orders are executed in full at an average price of $24.76.

- **Winner accounts places buy orders to accumulate position:** One second after the helper account has placed the sell limit orders, O'Brien places and executes four market orders for 1,000 shares each to purchase a total of 4,000 shares of PRIM in the winner account held at Brokerage Firm D. The orders are executed between 9:30:33 and 9:30:38 for an average of $24.70 per share. The outstanding limit order in the helper account is cancelled 6 seconds later.
- **Reversal in helper account – Helper account places buy orders:** Thirty-eight seconds after the winner account has accumulated its 4,000 share position, the helper account places 4 buy limit orders between 9:31:16 and 9:31:40 for 100 shares each. Each of these limit orders is at a higher or the same limit price as the previous one, beginning at $24.96 and ending at $25.26. Through these trades, the helper account purchases 300 shares at an average price of $25.16. In combination with the buy orders in the winner account, these orders suggest to the market a positive interest in the stock, putting upward pressure on stock price.
- **Winner account places sell orders account to close out its position:** Starting one second after the helper account has placed its final limit buy order, the Brokerage Firm C winner account places four market sell orders for 1,000 shares each, selling a total of 4,000 shares at an average price of $25.17 and netting $1,880 for the winner account.
- **Helper account places sell orders to close out its position:** Four seconds after the winner account has closed out its position, the helper account closes its own position for a total loss of $87.

*C. Helper and Winner Accounts Have Different Trading Patterns*

17. Trading in helper and winner accounts is distinctly different in several aspects summarized in Exhibit 2. For each type of account and for each calendar year in the Coordinated Trading Period, the exhibit shows the median transaction size in dollars, the median profit per Event, the median number of orders (including both executions and cancelations) per Event, as well as the proportion of limit orders as a percentage of all orders in the analyzed Events. The differences between the helper and winner accounts are consistent with the SEC allegations of coordinated trading.

18. Over the combined seven calendar years in the Coordinated Trading Period, the median transaction size in helper accounts is 213 shares per order, whereas the median transaction size in winner accounts is more than ten times higher, at 2,700 shares.

19. While the median transaction size for winner accounts exceeds the median transaction size for helper accounts, helper accounts place many more orders than winner accounts. Over the entire Coordinated Trading Period, the helper accounts have a median of 35 orders per Event, whereas the winner accounts have a median of only about six orders per Event. That is, the median number of orders per Event in helper accounts exceeds the median number of orders in the winner account by a factor of six.

20. Throughout the entire Coordinated Trading Period, helper accounts are unprofitable whereas winner accounts generate profits. Over the entire Coordinated Trading Period, the helper accounts experience median loss of $66 per Event, while the median profit in winner accounts is $358 per Event.

21. Finally, Exhibit 2 shows that helper accounts are much more likely to use limit orders instead of market orders when compared to winner accounts. Over the Coordinated Trading Period, helper accounts use limit orders for 97.2% of all orders. Winner accounts instead

tend to trade using market orders, with limit orders representing only 40.5% of all orders.

22. Exhibit 2 also breaks these numbers out by calendar year. While there is some variation in the numbers across years, the patterns described above applies to each year between 2015 and 2021. Overall, I conclude that there is evidence consistent with the SEC allegations of coordinated trading.

## IV. O'Brien Received $6.1 Million in Profits from Coordinated Trading Events between December 2015 and May 2021.

23. Based on my definition of coordinated trading, I find that O'Brien engaged in coordinated trading between December 2015 and May 2021. As mentioned above, I find that during this time period, O'Brien carried out around 19,300 Coordinated Trading Events using 24 brokerage accounts at 18 brokerage firms. These Events involve around $11.280 billion invested to purchase almost 300 million shares and result in about $6.116 million net profits.

24. Exhibit 3 provides details on the profitability of the Coordinated Trading Events. The trading in the Events results in net profits of approximately $6.1 million. Of the 19,308 Events, 14,275 or 73.9% result in a positive net profit totaling $10.4 million. The remaining 26.1% of Events result in a negative net profit of $4.3 million. The average gain per profitable Event is $730, whereas the average loss per non-profitable Event is $857.

25. The exhibit also breaks down these statistics by the number of accounts involved in Coordinated Trading Events. Around 82% (that is, 15,897 out of 19,308) of all Events involve one winner account and one helper account. Almost all remaining Events (17%) involve three accounts.[22] Approximately 1% of all Events involve more than three accounts.

26. Exhibit 4 shows the number of Coordinated Trading Events by year and their

---

[22] These events include at least one winner and one helper account, and may include additional accounts not characterized as winner or helper accounts.

profitability. The year 2016 accounts for over 50% of the total net gains ($3.6 out of $6.1 million).

27. Next, I assess whether the coordinated trading was unusually profitable for O'Brien relative to his other trading. I compare O'Brien's invested amounts and profits from Coordinated Trading Events with the profitability of his overall trading activity, that is, his full portfolio of Coordinated Trading Events plus his trading that does not fit the definition of Coordinated Trading Events.[23] I find that overall during the Coordinated Trading Period, O'Brien invests around $17.533 billion to purchase approximately 520.6 million shares. Thus, out of the overall dollar amount O'Brien uses to purchase stocks between December 2015 and May 2021, 64.3% (= $11.280 billion / $17.533 billion) corresponds to Coordinated Trading Events.

28. Overall, between December 2015 and May 2021, O'Brien's trading generates around $6.413 million in profits. Thus, his profits from Coordinated Trading Events account for 95.4% (= $6.116 million / $6.413 million) of overall profits.



Evgeny (Eugene) Orlov

August 05, 2022

[23] As before, I only consider day trading when reviewing O'Brien's overall trading activity. His trading activity that does not fit the definition of Coordinated Trading Events may include other instances of coordinated trading.

**Exhibit 1A. Example of Coordinated Trading Event**

Company SLAB September 29, 2016

9:44:44 AM - 9:45:22 AM

| ID | Source | Account | Role | Order Time | Execution Time | Cancel Time | Buy/ Sell | Order Type | Order Quantity | Execution Quantity | Share Balance | Order Price | Execution Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Brokerage A | ****0697 | Helper | 9:44:44 | | 9:44:47 | SELL | Limit | 100 | 0 | 0 | 57.55 | |
| 2 | Brokerage A | ****0697 | Helper | 9:44:48 | | 9:45:05 | SELL | Limit | 100 | 0 | 0 | 57.39 | |
| 3 | Brokerage A | ****0697 | Helper | 9:44:51 | 9:44:51 | | SELL | Limit | 100 | (100) | (100) | 57.19 | 57.19 |
| 4 | Brokerage A | ****0697 | Helper | 9:44:51 | | 9:45:05 | SELL | Limit | 100 | 0 | (100) | 57.19 | |
| 5 | Brokerage A | ****0697 | Helper | 9:44:52 | | 9:45:05 | SELL | Limit | 100 | 0 | (100) | 57.19 | |
| 6 | Brokerage B | ****3322 | Winner | 9:44:54 | 9:44:54 | | BUY | Market | 2,700 | 2,700 | 2,700 | | 57.11 |
| 7 | Brokerage A | ****0697 | Helper | 9:44:57 | 9:44:58 | | SELL | Limit | 100 | (100) | (200) | 57.01 | 57.01 |
| 8 | Brokerage A | ****0697 | Helper | 9:44:57 | 9:44:58 | | SELL | Limit | 100 | (100) | (300) | 57.01 | 57.01 |
| 9 | Brokerage B | ****3322 | Winner | 9:44:59 | 9:44:59 | | BUY | Market | 2,700 | 2,700 | 5,400 | | 57.10 |
| 10 | Brokerage A | ****0697 | Helper | 9:45:02 | 9:45:03 | | SELL | Limit | 100 | (100) | (400) | 57.01 | 57.01 |
| 11 | Brokerage B | ****3322 | Winner | 9:45:04 | 9:45:04 | | BUY | Market | 2,700 | 2,700 | 8,100 | | 57.01 |
| 12 | Brokerage A | ****0697 | Helper | 9:45:07 | 9:45:07 | | BUY | Market | 300 | 300 | (100) | | 57.20 |
| 13 | Brokerage A | ****0697 | Helper | 9:45:08 | 9:45:08 | | BUY | Limit | 100 | 100 | 0 | 57.38 | 57.38 |
| 14 | Brokerage A | ****0697 | Helper | 9:45:08 | | 9:45:19 | BUY | Limit | 100 | 0 | 0 | 57.38 | |
| 15 | Brokerage A | ****0697 | Helper | 9:45:09 | | 9:45:19 | BUY | Limit | 100 | 0 | 0 | 57.38 | |
| 16 | Brokerage A | ****0697 | Helper | 9:45:09 | | 9:45:19 | BUY | Limit | 100 | 0 | 0 | 57.38 | |
| 17 | Brokerage A | ****0697 | Helper | 9:45:09 | | 9:45:19 | BUY | Limit | 100 | 0 | 0 | 57.38 | |
| 18 | Brokerage A | ****0697 | Helper | 9:45:10 | 9:45:10 | | BUY | Limit | 100 | 100 | 100 | 57.76 | 57.75 |
| 19 | Brokerage A | ****0697 | Helper | 9:45:12 | 9:45:12 | | BUY | Limit | 100 | 100 | 200 | 57.65 | 57.65 |
| 20 | Brokerage A | ****0697 | Helper | 9:45:12 | 9:45:15 | | BUY | Limit | 100 | 100 | 300 | 57.65 | 57.65 |
| 21 | Brokerage A | ****0697 | Helper | 9:45:12 | 9:45:15 | 9:45:19 | BUY | Limit | 100 | 20 | 320 | 57.65 | 57.65 |
| 22 | Brokerage A | ****0697 | Helper | 9:45:12 | | 9:45:19 | BUY | Limit | 100 | 0 | 320 | 57.65 | |
| 23 | Brokerage A | ****0697 | Helper | 9:45:12 | | 9:45:19 | BUY | Limit | 100 | 0 | 320 | 57.65 | |
| 24 | Brokerage B | ****3322 | Winner | 9:45:14 | 9:45:14 | | SELL | Market | 2,700 | (2,700) | 5,400 | | 57.76 |
| 25 | Brokerage B | ****3322 | Winner | 9:45:15 | 9:45:15 | | SELL | Market | 2,700 | (2,700) | 2,700 | | 57.76 |
| 26 | Brokerage B | ****3322 | Winner | 9:45:18 | 9:45:18 | | SELL | Market | 2,700 | (2,700) | 0 | | 57.76 |
| 27 | Brokerage A | ****0697 | Helper | 9:45:20 | 9:45:20 | 9:45:20 | SELL | Limit | 320 | (200) | 120 | 57.60 | 57.60 |
| 28 | Brokerage A | ****0697 | Helper | 9:45:20 | | 9:45:22 | SELL | Limit | 320 | 0 | 120 | 57.60 | |
| 29 | Brokerage A | ****0697 | Helper | 9:45:20 | | 9:45:20 | SELL | Limit | 120 | 0 | 120 | 57.60 | |
| 30 | Brokerage A | ****0697 | Helper | 9:45:21 | 9:45:21 | | SELL | Limit | 120 | (120) | 0 | 57.31 | 57.34 |

Notes: If an order was executed in parts, the execution time is from the final execution. Highlighted rows indicate winner account activity.

**Exhibit 1B. Example of Coordinated Trading Event**

Company LRCX October 21, 2016
9:56:51 AM - 9:57:18 AM

| ID | Source | Account | Role | Order Time | Execution Time | Cancel Time | Buy/ Sell | Order Type | Order Quantity | Execution Quantity | Share Balance | Order Price | Execution Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Brokerage A | ****0697 | Helper | 9:56:51 | 9:56:52 | | BUY | Limit | 100 | 100 | 100 | 98.58 | 98.58 |
| 2 | Brokerage A | ****0697 | Helper | 9:56:52 | 9:56:52 | | BUY | Limit | 100 | 100 | 200 | 98.61 | 98.61 |
| 3 | Brokerage A | ****0697 | Helper | 9:56:53 | 9:56:53 | | BUY | Limit | 100 | 100 | 300 | 98.61 | 98.61 |
| 4 | Brokerage A | ****0697 | Helper | 9:56:54 | 9:56:59 | | BUY | Limit | 100 | 100 | 400 | 98.59 | 98.59 |
| 5 | Brokerage A | ****0697 | Helper | 9:56:54 | 9:56:59 | | BUY | Limit | 100 | 100 | 500 | 98.59 | 98.59 |
| 6 | Brokerage B | ****3323 | Winner | 9:56:57 | 9:56:57 | | SELL | Market | 4,800 | (4,800) | (4,800) | | 98.59 |
| 7 | Brokerage B | ****3323 | Winner | 9:56:59 | 9:56:59 | | SELL | Market | 4,800 | (4,800) | (9,600) | | 98.59 |
| 8 | Brokerage B | ****3323 | Winner | 9:57:00 | 9:57:01 | | SELL | Market | 4,800 | (4,800) | (14,400) | | 98.38 |
| 9 | Brokerage A | ****0697 | Helper | 9:57:04 | | 9:57:07 | SELL | Limit | 100 | | 500 | 98.41 | |
| 10 | Brokerage A | ****0697 | Helper | 9:57:04 | 9:57:05 | | SELL | Limit | 100 | (100) | 400 | 98.32 | 98.32 |
| 11 | Brokerage A | ****0697 | Helper | 9:57:06 | 9:57:06 | | SELL | Limit | 100 | (100) | 300 | 98.31 | 98.31 |
| 12 | Brokerage A | ****0697 | Helper | 9:57:07 | 9:57:07 | | SELL | Limit | 100 | (100) | 200 | 98.31 | 98.31 |
| 13 | Brokerage A | ****0697 | Helper | 9:57:07 | 9:57:07 | | SELL | Limit | 100 | (100) | 100 | 98.31 | 98.31 |
| 14 | Brokerage A | ****0697 | Helper | 9:57:07 | 9:57:07 | | SELL | Limit | 100 | (100) | 0 | 98.31 | 98.31 |
| 15 | Brokerage A | ****0697 | Helper | 9:57:08 | 9:57:08 | | SELL | Limit | 100 | (100) | (100) | 98.31 | 98.31 |
| 16 | Brokerage A | ****0697 | Helper | 9:57:08 | 9:57:08 | | SELL | Limit | 100 | (100) | (200) | 98.31 | 98.31 |
| 17 | Brokerage A | ****0697 | Helper | 9:57:08 | 9:57:08 | | SELL | Limit | 100 | (100) | (300) | 98.31 | 98.31 |
| 18 | Brokerage A | ****0697 | Helper | 9:57:08 | 9:57:08 | | SELL | Limit | 100 | (100) | (400) | 98.31 | 98.31 |
| 19 | Brokerage B | ****3323 | Winner | 9:57:10 | 9:57:11 | | BUY | Market | 4,800 | 4,800 | (9,600) | | 98.31 |
| 20 | Brokerage B | ****3323 | Winner | 9:57:12 | 9:57:12 | | BUY | Market | 4,800 | 4,800 | (4,800) | | 98.35 |
| 21 | Brokerage B | ****3323 | Winner | 9:57:13 | 9:57:13 | | BUY | Market | 4,800 | 4,800 | 0 | | 98.36 |
| 22 | Brokerage A | ****0697 | Helper | 9:57:18 | 9:57:18 | | BUY | Market | 400 | 400 | 0 | | 98.44 |

Notes: If an order was executed in parts, the execution time is from the final execution. Highlighted rows indicate winner account activity.

**Exhibit 1C. Example of Coordinated Trading Event**

Company PRIM January 27, 2017

9:30:16 AM - 9:31:50 AM

| ID | Source | Account | Role | Order Time | Execution Time | Cancel Time | Buy/ Sell | Order Type | Order Quantity | Execution Quantity | Share Balance | Order Price | Execution Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Brokerage C | ****0164 | Helper | 9:30:16 | | 9:30:44 | SELL | Limit | 100 | | 0 | 25.00 | |
| 2 | Brokerage C | ****0164 | Helper | 9:30:26 | 9:30:38 | | SELL | Limit | 100 | (100) | (100) | 24.82 | 24.82 |
| 3 | Brokerage C | ****0164 | Helper | 9:30:32 | 9:30:38 | | SELL | Limit | 100 | (100) | (200) | 24.69 | 24.69 |
| 4 | Brokerage D | ****9747 | Winner | 9:30:33 | 9:30:33 | | BUY | Market | 1,000 | 1,000 | 1,000 | 0.00 | 24.57 |
| 5 | Brokerage D | ****9747 | Winner | 9:30:34 | 9:30:35 | | BUY | Market | 1,000 | 1,000 | 2,000 | 0.00 | 24.66 |
| 6 | Brokerage D | ****9747 | Winner | 9:30:36 | 9:30:37 | | BUY | Market | 1,000 | 1,000 | 3,000 | 0.00 | 24.63 |
| 7 | Brokerage D | ****9747 | Winner | 9:30:37 | 9:30:38 | | BUY | Market | 1,000 | 1,000 | 4,000 | 0.00 | 24.92 |
| 8 | Brokerage C | ****0164 | Helper | 9:31:16 | | 9:31:28 | BUY | Limit | 100 | | (200) | 24.96 | |
| 9 | Brokerage C | ****0164 | Helper | 9:31:22 | 9:31:22 | | BUY | Limit | 100 | 100 | (100) | 25.11 | 25.11 |
| 10 | Brokerage C | ****0164 | Helper | 9:31:30 | 9:31:30 | | BUY | Limit | 100 | 100 | 0 | 25.11 | 25.11 |
| 11 | Brokerage C | ****0164 | Helper | 9:31:40 | 9:31:40 | | BUY | Limit | 100 | 100 | 100 | 25.26 | 25.26 |
| 12 | Brokerage D | ****9747 | Winner | 9:31:41 | 9:31:42 | | SELL | Market | 1,000 | (1,000) | 3,000 | 0.00 | 25.14 |
| 13 | Brokerage D | ****9747 | Winner | 9:31:42 | 9:31:43 | | SELL | Market | 1,000 | (1,000) | 2,000 | 0.00 | 25.16 |
| 14 | Brokerage D | ****9747 | Winner | 9:31:43 | 9:31:44 | | SELL | Market | 1,000 | (1,000) | 1,000 | 0.00 | 25.23 |
| 15 | Brokerage D | ****9747 | Winner | 9:31:45 | 9:31:45 | | SELL | Market | 1,000 | (1,000) | 0 | 0.00 | 25.14 |
| 16 | Brokerage C | ****0164 | Helper | 9:31:49 | 9:31:50 | | SELL | Market | 100 | (100) | 0 | 0.00 | 25.10 |

Notes: If an order was executed in parts, the execution time is from the final execution. Highlighted rows indicate winner account activity.

**Exhibit 2. Comparison of Trades in Winner and Helper Accounts**

December 2015 - May 2021

| | Helper Accounts | | | | Winner Accounts | | | |
|---|---|---|---|---|---|---|---|---|
| Year | Median Avg Order Size, # Shares | Median Profit Per Event | Median # Orders Per Event | % of Limit Orders | Median Avg Order Size, # Shares | Median Profit Per Event | Median # Orders Per Event | % of Limit Orders |
| 2015 | 178 | -$172 | 24 | 86.9% | 1,758 | $422 | 15 | 59.6% |
| 2016 | 252 | -$122 | 60 | 97.4% | 2,143 | $386 | 7 | 46.7% |
| 2017 | 255 | -$13 | 28 | 90.6% | 3,000 | $266 | 4 | 40.1% |
| 2018 | 175 | -$22 | 17 | 96.8% | 4,900 | $400 | 4 | 20.4% |
| 2019 | 178 | -$44 | 22 | 97.6% | 4,600 | $384 | 4 | 19.8% |
| 2020 | 167 | -$19 | 17 | 98.0% | 3,733 | $234 | 5 | 31.6% |
| 2021 | 253 | -$4 | 12 | 94.2% | 1,426 | $125 | 12 | 60.5% |
| Total | 213 | -$66 | 35 | 97.2% | 2,700 | $358 | 6 | 40.5% |

Notes: The exhibit summarizes order characteristics and realized trading profits for trading activity in helper and winner accounts from all coordinated trading events. Helper account and winner account are defined in the report. Average Order Size is the average order size across helper(winner) accounts during an Event. Profit per Event is the aggregate profit from all helper(winner) accounts used in an Event. % of Limit Orders is the number of orders in the calendar year that are identified as limit orders, divided by the number of orders in the calendar year that are identified as either limit, market, or stop orders.

## Exhibit 3. James O'Brien's Coordinated Trading Events

December 2015 - May 2021

| Number of Accounts Trading an Event | Number of Events | Number of Net Profitable Events | Percent of Net Profitable Events | Profits on Net Profitable Events, $ | Avg Profit Per Net Profitable Event, $ | Losses on Net Unprofitable Events, $ | Avg Loss per Net Unprofitable Event, $ | Net Gain from All Events, $ | Average Net Gain Per Event, $ |
|---|---|---|---|---|---|---|---|---|---|
| 2 | 15,897 | 11,936 | 75.1% | 7,904,844 | 662 | (2,848,308) | (719) | 5,056,537 | 318 |
| 3 | 3,226 | 2,236 | 69.3% | 2,360,971 | 1,056 | (1,255,325) | (1,268) | 1,105,646 | 343 |
| 4 | 166 | 94 | 56.6% | 148,724 | 1,582 | (165,577) | (2,300) | (16,853) | (102) |
| 5 | 19 | 9 | 47.4% | 12,034 | 1,337 | (41,774) | (4,177) | (29,740) | (1,565) |
| Total | 19,308 | 14,275 | 73.9% | 10,426,573 | 730 | (4,310,983) | (857) | 6,115,590 | 317 |

Notes: The exhibit summarizes the realized profits from all coordinated trading events. Number of Accounts is the total number of identified brokerage accounts placing orders during an Event including helper accounts, winner accounts, and accounts that do not qualify as either helper or winner accounts. Helper account and winner account are defined in the report.

**Exhibit 4. James O'Brien's Coordinated Trading Events, by Year**

December 2015 - May 2021

| Year | Number of Events | Number of Net Profitable Events | Percent of Net Profitable Events | Profits on Net Profitable Events, $ | Avg Profit Per Net Profitable Event, $ | Losses on Net Unprofitable Events, $ | Avg Loss per Net Unprofitable Event, $ | Net Gain from All Events, $ | Average Net Gain Per Event, $ |
|---|---|---|---|---|---|---|---|---|---|
| 2015 | 4 | 2 | 50.0% | 2,255 | 1,128 | (192) | (96) | 2,063 | 516 |
| 2016 | 9,910 | 7,554 | 76.2% | 4,854,748 | 643 | (1,258,497) | (534) | 3,596,251 | 363 |
| 2017 | 932 | 711 | 76.3% | 497,951 | 700 | (176,346) | (798) | 321,604 | 345 |
| 2018 | 3,037 | 2,240 | 73.8% | 1,890,661 | 844 | (885,367) | (1,111) | 1,005,294 | 331 |
| 2019 | 2,619 | 1,894 | 72.3% | 1,728,361 | 913 | (869,157) | (1,199) | 859,204 | 328 |
| 2020 | 2,630 | 1,737 | 66.0% | 1,411,830 | 813 | (1,103,322) | (1,236) | 308,508 | 117 |
| 2021 | 176 | 137 | 77.8% | 40,768 | 298 | (18,101) | (464) | 22,667 | 129 |
| Total | 19,308 | 14,275 | 73.9% | 10,426,573 | 730 | (4,310,983) | (857) | 6,115,590 | 317 |

Notes: The exhibit summarizes the realized profits from all coordinated trading events, by calendar year in which the Event occurred.

# Appendix A: Curriculum Vitae


## Evgeny (Eugene) Orlov, Ph.D.

(323) 965-2675 • 444 South Flower St., Ste. 900, Los Angeles 90071 • OrlovE@sec.gov


## Summary

Dr. Eugene Orlov is a Financial Economist in the Office of Litigation Economics at the U.S. Securities and Exchange Commission. He applies economic theory, analytical techniques and statistical methods using securities and financial market data to assist the Commission in the investigation of potential securities law violations, and on the Commission's other actions.

Prior to joining the SEC, Dr. Orlov worked in private sector economic consulting where he specialized in applying economic and statistical tools to securities, finance, competition, and antitrust cases. Dr. Orlov earned a Ph.D. in Economics from Northwestern University where he taught undergraduate students.

## Education

**Northwestern University** — **Evanston, IL**
Ph.D. in Economics — December 2005

**Northwestern University** — **Evanston, IL**
M.A. in Economics — June 2001

**New Economic School** — **Moscow, Russia**
M.A. in Economics — June 2000

**Moscow State University** — **Moscow, Russia**
B.A. in Mathematics, Highest Honor — June 1999

## Professional Experience

**U.S. Securities and Exchange Commission** — **Los Angeles, CA**
**Division of Economic and Risk Analysis, Office of Litigation Economics**
*Financial Economist* — August 2018-Present

- Contributed to the design and implementation of economic analyses as well as the creation of deliverables such as summaries of analyses and memos to attorneys.
- Worked on a variety of enforcement matters including:
    - Detected patterns of cherry-picking profitable trades by investment advisors.
    - Identified evidence of liability in a variety of enforcement matters.
    - Calculated ill-gotten gains from insider trading and other fraudulent trading practices.
    - Assessed the price impact of company disclosures of accounting fraud and calculated corporate benefit and executives' disgorgement.
    - Analyzed large-scale data to determine a trading firm's cross-trading patterns of odd lots.
- Provided a significant contribution to the economic analysis of the proposed NMS 2.0 Market Data and Infrastructure regulation.

**Compass Lexecon (formerly Lexecon)** **Chicago, IL and Los Angeles, CA**
*Senior Vice President* April 2014-May 2018
*Vice President* April 2011-March 2014
*Senior Economist* July 2005-March 2011

- Managed large project teams conducting analyses in antitrust analyses of proposed mergers, antitrust and securities class actions, and regulatory investigations. Interpreted findings and communicated results to clients.
- Analyzed large-scale trading data to calculate post-settlement disgorgements.
- Prepared expert reports for testifying experts, and responded to expert testimony in securities and antitrust litigation. Explained technical concepts, methodology, and findings in plain language.
- Applied economic theory and complicated statistical and econometric methods to antitrust and securities matters.
- Managed multiple concurrent projects often against tight deadlines and last minute client requests.
- Designed and taught a series of lectures for beginner SAS programmers.

## Teaching Experience

**Northwestern University** **Evanston, IL**
*Instructor* June 2004-August 2004

Taught undergraduate courses in Macroeconomics in the School of Continuing Studies.

*Teaching Assistant* September 2001-June 2005

Taught graduate and undergraduate courses in Macroeconomics, Microeconomics, Econometrics, Management Strategy and Marketing Strategy. Guided undergraduate students in the design and implementation of economic analyses in their research papers.

*Research Assistant* December 2000-June 2003

## Reports and Declarations

- Filed an expert report, a supplemental and rebuttal report, a declaration, and provided witness testimony at a deposition on a revenue-sharing case. SEC v. Commonwealth Equity Services, No. 1:19-cv-11655, U.S. District Court District Of Massachusetts, May-November 2021.
- Filed summary witness declarations on analyses of healthcare data in Re: New Mexico Oncology and Hematology Consultants, LTD. v. Presbyterian Healthcare Services, Presbyterian Network, INC, Presbyterian, Health Plan, INC., and Presbyterian Insurance Company, INC., United States District Court for the District of New Mexico, Case No. 1:12-CV-00526 MV/GBW. Declarations dated February 15, 2016, March 14, 2016, June 27, 2017, on behalf of New Mexico Oncology and Hematology Consultants.

## Research

- "Are Legacy Airline Mergers Pro- or Anti-Competitive? Evidence from Recent U.S. Airline Mergers", with Dennis Carlton, Mark Israel and Ian MacSwain, 2019, International Journal of Industrial Organization, 62(C), pp. 58-95.
- "The Effect of the Internet on Product Quality in the Airline Industry", with Itai Ater, 2015, Review of Economics and Statistics, 97(1), pp. 180-194.
- "Internet Penetration and Capacity Utilization in the US Airline Industry", with James Dana, 2014, American Economic Journal: Microeconomics, 6(4), pp. 106-137.
- "How Does the Internet Influence Price Dispersion? Evidence from the Airline Industry", 2011, Journal of Industrial Economics, 59(1), pp. 21-37.

## Professional Activities

- Referee for: *RAND Journal of Economics, Journal of Industrial Economics, Antitrust Law Journal, Journal of Applied Economics, Review of Economics and Statistics*

## Honors and Fellowships

- NET Institute Grant 2013
- Center for Studies in Industrial Organization Fellowship – Northwestern University 2005
- Transportation Center Research Grant – Northwestern University Grant 2004
- Distinguished Teaching Assistant Award – Northwestern University 2003-2004
- Summer Fellowship – Northwestern University 2002-2004
- Economic Education and Research Consortium Grant 2000-2002
- Northwestern University Fellow 2000-2001
- Best Master Thesis Award – New Economic School 2000

## Software Skills and Financial Data

- Proficient in SAS, Stata and Matlab.
- Skilled user of financial data sources, including Bloomberg, Wharton Research Data Services, Thompson One, and Capital IQ.

## Languages

- English (fluent), and Russian (native).

# Appendix B: Materials Considered

1. **Complaint:**
    a. Complaint, Securities and Exchange Commission vs. James David O'Brien, United States District Court, Southern District of New York, Case 1:21-cv-09575.

2. **Trade Blotters:**
    a. Lightspeed Financial
        i. OBRIEN Executions Blotter.csv
        ii. OBRIEN Orders Blotter.csv
    b. Scottrade
        i. Order Details.xlsx (for account 60082332)
        ii. Order Details.xlsx (for account 60686258)
        iii. Order Details.xlsx (for account 60686259)
    c. Score Priority
        i. 64300164 All Orders Audit Trail.csv
    d. Apex Clearing Corp
        i. Trading Blotter.xlsx
    e. BofA Merrill
        i. 2015 Trade Blotter.BATES.xlsx
        ii. 2016 Trade Blotter.BATES.xlsx
    f. Charles Schwab
        i. 2. order file.xlsx
        ii. Brenda OBrien - Order File.xlsx
        iii. James OBrien - Order File.xlsx
        iv. OBrien - Order File.xlsx
        v. Order File - Copy.xlsx
        vi. Order File Legend.pdf
        vii. Order File.xlsx
    g. Citi
        i. CITI0000003 - TRADES_C53407323.xlsx
    h. Etrade
        i. Copy of SEc Obrien trade.xlsx
    i. Fidelity
        i. EXHIBIT B-1.xlsx
    j. Interactive Brokers
        i. Tradeblotter.xlsx
        ii. 2017.csv
        iii. 2018.csv
        iv. 2019.csv
        v. 2020.csv

        vi. 2021.csv
    k. MLPFS
        i. Trade Blotter.BATES.xlsx
    l. Pershing
        i. Copy of Updated Exhibit C - Order Details2.xlsx
        ii. Exhibit C - Order Report.xlsx
    m. Regal Securities
        i. 59778673-Order-Detail-All-Order-Activity-2020-10-07.csv
        ii. Data Legend.xlsx
        iii. OrdersAll.xlsx
    n. Southwest Hilltop
        i. Updated Trade Blotter.xlsx
    o. TD Ameritrade
        i. Order Information 2.xlsx
        ii. Order Information.xlsx
    p. TradeKing Securities
        i. 38885252_Blotter.xlsx
    q. TradeStation
        i. Orders.xlsx
    r. TradeZero
        i. 2TZ10930 - Cancellations (NY09615-000060).csv
        ii. 2TZ10930 - Orders (NY09615-000058).csv
        iii. 2TZ10930 - Trades (NY09615-000059).csv
    s. Vanguard
        i. Exhibit B - 23374244 - Daily Trade Report.xlsx
        ii. Exhibit B - 35839366 - Daily Trade Report.xlsx
        iii. Exhibit B - 46730932 - Daily Trade Report.xlsx
        iv. Exhibit B - 48038621 - Daily Trade Report.xlsx
        v. Exhibit B - 88583426 - Daily Trade Report.xlsx
    t. Wedbush
        i. P3_1LD40697-Blotter_20151201_20171231.xlsx
    u. Wells Fargo
        i. WFCS-005665 REQ17216 Order Data (O'Brien).xlsx
        ii. WFCS-005666 REQ17216 Trade Blotter (O'Brien).xlsx
    v. Vision Financial
        i. 64300164  2017 trades.xlsx
        ii. 64300164 2018 to present trades.xlsx
        iii. Order History updated.xlsx.

**3. Account Statements:**
    a. Lightspeed Financial
        i. 1-2016 1LD40697.pdf
        ii. 10-16 1LD40697.pdf

iii. 11-16 1LD40697.pdf
iv. 12-16 1LD40697.pdf
v. 12-17.pdf
vi. 1LD40697 1-2017.pdf
vii. 1LD40697 3-2017.pdf
viii. 1Ld40697 2-2017.pdf
ix. 2-2016 1LD40697.pdf
x. 3-2016 1LD40697.pdf
xi. 4-17.pdf
xii. 4-2016 1LD40697.pdf
xiii. 5-17.pdf
xiv. 5-2016 1LD40697.pdf
xv. 6-2016 1LD40697.pdf
xvi. 7-16 1LD40697.pdf
xvii. 8-16 1LD40697.pdf
xviii. 9-16 1LD40697.pdf

b. Scottrade
   i. Monthly_Statement_for_April_2017_for_Account_60082332.pdf
   ii. Monthly_Statement_for_August_2016_for_Account_60082332.pdf
   iii. Monthly_Statement_for_December_2016_for_Account_60082332.pdf
   iv. Monthly_Statement_for_December_2016_for_Account_60686259.pdf
   v. Monthly_Statement_for_March_2017_for_Account_60082332.pdf
   vi. Monthly_Statement_for_March_2017_for_Account_60686259.pdf
   vii. Monthly_Statement_for_November_2016_for_Account_60082332.pdf
   viii. Monthly_Statement_for_November_2016_for_Account_60686258.pdf
   ix. Monthly_Statement_for_October_2016_for_Account_60082332.pdf
   x. Monthly_Statement_for_October_2016_for_Account_60686258.pdf
   xi. Monthly_Statement_for_September_2016_for_Account_60082332.pdf
   xii. Monthly_Statement_for_September_2016_for_Account_60686258.pdf

c. Apex Clearing Corp
   i. 2TZ10930 Statements 2.pdf
   ii. 2TZ10930 Statements 3.pdf
   iii. 2TZ10930 Statements.pdf
   iv. 38885252 Statements.pdf
   v. 4BF19799 Statement. 2pdf.pdf
   vi. 4BF19799 Statement.pdf
   vii. 5FH28604 Statement.pdf
   viii. 5FH28604 Statements.pdf
   ix. 5KX51364 Statement 2.pdf
   x. 5KX51364 Statement 3.pdf
   xi. 5KX51364 Statement 4.pdf
   xii. 5KX51364 Statement.pdf
   xiii. 5LF22747 Statement 2.pdf

xiv. 5LF22747 Statement 3.pdf
xv. 5LF22747 Statement.pdf
xvi. 5QN33306 Statement 2.pdf
xvii. 5QN33306 Statement 3.pdf
xviii. 5QN33306 Statement 4.pdf
xix. 5QN33306 Statement 5.pdf
xx. 5QN33306 Statement.pdf
xxi. 5TA56085 Statement 2.pdf
xxii. 5TA56085 Statement 3.pdf
xxiii. 5TA56085 Statement.pdf
xxiv. 5WU25577 Statements 2.pdf
xxv. 5WU25577 Statements 3.pdf
xxvi. 5WU25577 Statements.pdf
xxvii. 62938721 Statement.pdf
xxviii. 62938721 Statements.pdf
xxix. 7SF47638 Statement 2.pdf
xxx. 7SF47638 Statement 3.pdf
xxxi. 7SF47638 Statement 4.pdf
xxxii. 7SF47638 Statement 5.pdf
xxxiii. 7SF47638 Statement 6.pdf
xxxiv. 7SF47638 Statement.pdf
xxxv. 7SZ43881 Statement 2.pdf
xxxvi. 7SZ43881 Statement 3.pdf
xxxvii. 7SZ43881 Statement.pdf
xxxviii. 91874317 Statement 2.pdf
xxxix. 91874317 Statement.pdf
xl. 91874317 Statements 2.pdf
xli. 91874317 Statements.pdf

d. BofA Merrill
   i. 20X64Y45 Account Statements.BATES.PDF
   ii. 25Z53K32 Account Statements.BATES.PDF
   iii. 27Z52K29 Account Statements.BATES.PDF
   iv. 27Z52K29.BATES.PDF
   v. 29Z52K26 Account Statements.BATES.PDF
   vi. 29Z52K26.BATES.PDF
   vii. 57X52K29 Account Statements.BATES.PDF
   viii. 5F523767 Account Statements.BATES.PDF
   ix. 5F523767.BATES.PDF

e. Charles Schwab
   i. 17039344 statements.PDF
   ii. 64010245 statements.PDF
   iii. Client_Statement_Original.17039344.2016-11.PDF
   iv. Client_Statement_Original.17039344.2016-12.PDF

v. Client_Statement_Original.17039344.2017-01.PDF
vi. Client_Statement_Original.17039344.2017-02.PDF
vii. Client_Statement_Original.17039344.2017-03.PDF
viii. Client_Statement_Original.17039344.2017-04.PDF
ix. Client_Statement_Original.17039344.2017-05.PDF
x. Client_Statement_Original.17039344.2017-06.PDF
xi. Client_Statement_Original.17039344.2017-07.PDF
xii. Client_Statement_Original.17039344.2017-08.PDF
xiii. Client_Statement_Original.17039344.2017-09.PDF
xiv. Client_Statement_Original.17039344.2017-10.PDF
xv. Client_Statement_Original.17039344.2017-11.PDF
xvi. Client_Statement_Original.17039344.2017-12.PDF
xvii. Client_Statement_Original.46523083.2016-10.PDF
xviii. Client_Statement_Original.46523083.2016-11.PDF
xix. Client_Statement_Original.46523083.2016-12.PDF
xx. Client_Statement_Original.46523083.2017-01.PDF
xxi. Client_Statement_Original.46523083.2017-02.PDF
xxii. Client_Statement_Original.46523083.2017-03.PDF
xxiii. Client_Statement_Original.46523083.2017-04.PDF
xxiv. Client_Statement_Original.46523083.2017-05.PDF
xxv. Client_Statement_Original.46523083.2017-06.PDF
xxvi. Client_Statement_Original.46523083.2017-07.PDF
xxvii. Client_Statement_Original.46523083.2017-08.PDF
xxviii. Client_Statement_Original.53209747.2015-10.PDF
xxix. Client_Statement_Original.53209747.2015-11.PDF
xxx. Client_Statement_Original.53209747.2015-12.PDF
xxxi. Client_Statement_Original.53209747.2016-01.PDF
xxxii. Client_Statement_Original.53209747.2016-02.PDF
xxxiii. Client_Statement_Original.53209747.2016-03.PDF
xxxiv. Client_Statement_Original.53209747.2016-04.PDF
xxxv. Client_Statement_Original.53209747.2016-05.PDF
xxxvi. Client_Statement_Original.53209747.2016-06.PDF
xxxvii. Client_Statement_Original.53209747.2016-07.PDF
xxxviii. Client_Statement_Original.53209747.2016-08.PDF
xxxix. Client_Statement_Original.53209747.2016-09.PDF
xl. Client_Statement_Original.53209747.2016-10.PDF
xli. Client_Statement_Original.53209747.2016-11.PDF
xlii. Client_Statement_Original.53209747.2016-12.PDF
xliii. Client_Statement_Original.53209747.2017-01.PDF
xliv. Client_Statement_Original.53209747.2017-02.PDF
xlv. Client_Statement_Original.53209747.2017-03.PDF
xlvi. Client_Statement_Original.53209747.2017-04.PDF
xlvii. Client_Statement_Original.53209747.2017-05.PDF

xlviii. Client_Statement_Original.53209747.2017-06.PDF
xlix. Client_Statement_Original.53209747.2017-07.PDF
l. Client_Statement_Original.53209747.2017-08.PDF
li. Client_Statement_Original.53209747.2017-09.PDF
lii. Client_Statement_Original.53209747.2017-12.PDF
liii. Client_Statement_Original.53209747.2018-03.PDF
liv. Client_Statement_Original.53209747.2018-06.PDF
lv. Client_Statement_Original.53209747.2018-09.PDF
lvi. Client_Statement_Original.53209747.2018-12.PDF
lvii. Client_Statement_Original.53209747.2019-03.PDF
lviii. Client_Statement_Original.53209747.2019-06.PDF
lix. Client_Statement_Original.53209747.2019-08.PDF
lx. Client_Statement_Original.55532773.2016-12.PDF
lxi. Client_Statement_Original.55532773.2017-01.PDF
lxii. Client_Statement_Original.55532773.2017-02.PDF
lxiii. Client_Statement_Original.55532773.2017-03.PDF
lxiv. Client_Statement_Original.55532773.2017-06.PDF
lxv. Client_Statement_Original.55532773.2017-08.PDF
lxvi. Client_Statement_Original.55532773.2017-09.PDF
lxvii. Client_Statement_Original.59352524.2019-08.PDF
lxviii. Client_Statement_Original.59352524.2019-09.PDF
lxix. Client_Statement_Original.59352524.2019-12.PDF
lxx. Client_Statement_Original.59352524.2020-03.PDF
lxxi. Client_Statement_Original.59352524.2020-06.PDF
lxxii. Client_Statement_Original.59352524.2020-09.PDF
lxxiii. Client_Statement_Original.59352524.2020-12.PDF
lxxiv. Client_Statement_Original.59352524.2021-03.PDF
lxxv. Client_Statement_Original.59352524.2021-06.PDF
lxxvi. Client_Statement_Original.59352524.2021-09.PDF
lxxvii. Client_Statement_Original.59352524.2021-12.PDF
lxxviii. Client_Statement_Original.59352524.2022-03.PDF
lxxix. Client_Statement_Original.64010245.2016-11.PDF
lxxx. Client_Statement_Original.64010245.2016-12.PDF
lxxxi. Client_Statement_Original.64010245.2017-01.PDF
lxxxii. Client_Statement_Original.64010245.2017-03.PDF
lxxxiii. Client_Statement_Original.64010245.2017-06.PDF
lxxxiv. Client_Statement_Original.64010245.2017-09.PDF
lxxxv. Client_Statement_Original.64010245.2017-10.PDF
lxxxvi. Client_Statement_Original.64010245.2017-11.PDF
lxxxvii. Client_Statement_Original.64010245.2017-12.PDF
lxxxviii. Client_Statement_Original.69884239.2017-07.PDF
lxxxix. Client_Statement_Original.69884239.2017-08.PDF
xc. Client_Statement_Original.69884239.2017-09.PDF

xci. Client_Statement_Original.69884239.2017-12.PDF
xcii. Client_Statement_Original.69884239.2018-03.PDF
xciii. Client_Statement_Original.69884239.2018-06.PDF
xciv. Client_Statement_Original.69884239.2018-09.PDF
xcv. Client_Statement_Original.69884239.2018-12.PDF
xcvi. Client_Statement_Original.69884239.2019-03.PDF
xcvii. Client_Statement_Original.69884239.2019-06.PDF
xcviii. Client_Statement_Original.69884239.2019-08.PDF
xcix. Client_Statement_Original.79360053.2016-11.PDF
c. Client_Statement_Original.79360053.2016-12.PDF
ci. Client_Statement_Original.79360053.2017-01.PDF
cii. Client_Statement_Original.79360053.2017-02.PDF
ciii. Client_Statement_Original.79360053.2017-03.PDF
civ. Client_Statement_Original.79360053.2017-06.PDF
cv. Client_Statement_Original.79360053.2017-08.PDF
cvi. Client_Statement_Original.79360053.2017-09.PDF

f. Fidelity
  i. EXHIBIT D.pdf
  ii. Exhibit 1.pdf
  iii. O'Brien Account Statements.pdf

g. Interactive Brokers
  i. U1976446.M.20161201.20161230.pdf
  ii. U1976446.M.20170102.20170131.pdf
  iii. U1976446.M.20170201.20170228.pdf
  iv. U1976446.M.20170301.20170331.pdf
  v. U1976446.M.20170403.20170428.pdf
  vi. U1976446.M.20170501.20170531.pdf
  vii. U1976446.M.20170601.20170630.pdf
  viii. U1976446.M.20170703.20170731.pdf
  ix. U1976446.M.20170801.20170831.pdf
  x. U1976446.M.20170901.20170929.pdf
  xi. U1976446.M.20171002.20171031.pdf
  xii. U1976446.M.20171101.20171130.pdf
  xiii. U1976446.M.20171201.20171229.pdf
  xiv. U1976446.M.20180102.20180131.pdf
  xv. U1976446.M.20180201.20180228.pdf
  xvi. U1976446.M.20180301.20180330.pdf
  xvii. U1976446.M.20180402.20180430.pdf
  xviii. U1976446.M.20180501.20180531.pdf
  xix. U1976446.M.20180601.20180629.pdf
  xx. U1976446.M.20180702.20180731.pdf
  xxi. U1976446.M.20180801.20180831.pdf
  xxii. U1976446.M.20180903.20180928.pdf

xxiii. U1976446.M.20181001.20181031.pdf
xxiv. U1976446.M.20181101.20181130.pdf
xxv. U1976446.M.20181203.20181231.pdf

h. MLPFS
  i. 20X64Y45 Account Statements.BATES.PDF
  ii. 24Z79J05 Account Statements.BATES.PDF
  iii. 29Z52K26 Account Statements.BATES.PDF
  iv. 5F523767 Account Statements.BATES.PDF

i. Pershing
  i. Exhibit E - Account Statements.pdf

j. Regal Securities
  i. 1-31-2018 Initial Statement.pdf
  ii. 11-29-19 through 8-31-20.pdf
  iii. 12-31-18 through 10-31-19.pdf
  iv. 2-28-2018 through 11-30-18.pdf
  v. 7-30-21 through 4-29-22.pdf
  vi. 9-30-2020 through 6-30-21.pdf

k. Southwest Hilltop
  i. James OBrien Statements.pdf
  ii. Statements 6-30-2022 through 5-31-2022.pdf
  iii. Statements Through 5-29-2020.pdf

l. TD Ameritrade
  i. 60686258 Statement.pdf

m. TradeKing Securities
  i. 38885252 - 2016 10.pdf
  ii. 38885252 - 2016 11.pdf
  iii. 38885252 - 2016 12.pdf
  iv. Exhibit 3_Acct Statements_62838721 - 2019 08.pdf

n. TradeStation
  i. 01292016 Statement - 17431567.PDF
  ii. 02292016 Statement - 17431567.PDF
  iii. 03312016 Statement - 17431567.PDF
  iv. 04292016 Statement - 17431567.PDF
  v. 05312016 Statement - 17431567.PDF
  vi. 06302016 Statement - 17431567.PDF
  vii. 07292016 Statement - 17431567.PDF
  viii. 08312016 Statement - 17431567.PDF
  ix. 09302015 Statement - 17431567.PDF
  x. 09302016 Statement - 17431567.PDF
  xi. 10302015 Statement - 17431567.PDF
  xii. 10312016 Statement - 17431567.PDF
  xiii. 11302015 Statement - 17431567.PDF
  xiv. 11302016 Statement - 17431567.PDF

xv. 12312015 Statement - 17431567.PDF

o. TradeZero
   i. April 2021 1 (NY09615-011213 - NY09615-012212).pdf
   ii. April 2021 2 (NY09615-012213 - NY09615-012859).pdf
   iii. August 2021 (NY09615-015751 - NY09615-016703).pdf
   iv. December 2020 1 (NY09615-002056 - NY09615-003055).pdf
   v. December 2020 2 (NY09615-003056 - NY09615-004055).pdf
   vi. December 2020 3 (NY09615-004056 - NY09615-004762).pdf
   vii. February 2021 1 (NY09615-006846 - NY09615-007845).pdf
   viii. February 2021 2 (NY09615-007846 - NY09615-008762).pdf
   ix. January 2021 1 (NY09615-004778 - NY09615-005777).pdf
   x. January 2021 2 (NY09615-005778 - NY09615-006777).pdf
   xi. January 2021 3 (NY09615-006778 - NY09615-006845).pdf
   xii. July 2021 (NY09615-015305 - NY09615-015750).pdf
   xiii. June 2021 1 (NY09615-013964 - NY09615-014963).pdf
   xiv. June 2021 2 (NY09615-014964 - NY09615-015304).pdf
   xv. March 2021 1 (NY09615-008763 - NY09615-009762).pdf
   xvi. March 2021 2 (NY09615-009763 - NY09615-010762).pdf
   xvii. March 2021 3 (NY09615-010763 - NY09615-011212).pdf
   xviii. May 2021 1 (NY09615-012860 - NY09615-013859).pdf
   xix. May 2021 2 (NY09615-013860 - NY09615-013963).pdf
   xx. November 2020 1 (NY09615-000248 - NY09615-001247).pdf
   xxi. November 2020 2 (NY09615-001248 - NY09615-002055).pdf
   xxii. November 2021 (NY09615-018195 - NY09615-019008).pdf
   xxiii. October 2020 (NY09615-000061 - NY09615-000242).pdf
   xxiv. October 2021 (NY09615-017459 - NY09615-018194).pdf
   xxv. September 2021 (NY09615-016704 - NY09615-017446).pdf

p. Wedbush
   i. May 2016 Statement.PDF

q. Wells Fargo
   i. 01.2018.pdf
   ii. 01.2019.pdf
   iii. 02.2018.pdf
   iv. 02.2019.pdf
   v. 03.2018.pdf
   vi. 03.2019.pdf
   vii. 04.2018.pdf
   viii. 04.2019.pdf
   ix. 05.2018.pdf
   x. 05.2019.pdf
   xi. 06.2018.pdf
   xii. 06.2019.pdf
   xiii. 07.2018.pdf

xiv. 07.2019.pdf
xv. 08.2018.pdf
xvi. 08.2019.pdf
xvii. 09.2018.pdf
xviii. 09.2019.pdf
xix. 10.2018.pdf
xx. 10.2019.pdf
xxi. 11.2018.pdf
xxii. 11.2019.pdf
xxiii. 12.2018.pdf
xxiv. 4278-3526 statements.pdf
xxv. 4278-3526 statements.pdf
xxvi. Statements_Account_Last_Four_Numbers_2216_Doc_ID_11605333_1.pdf
xxvii. Statements_Account_Last_Four_Numbers_3603_Doc_ID_11605835_1.pdf
xxviii. Statements_Account_Last_Four_Numbers_3971_Doc_ID_11596395_1.pdf
xxix. Statements_Account_Last_Four_Numbers_4367_Doc_ID_11629389_1.pdf
xxx. Statements_Account_Last_Four_Numbers_6836_Doc_ID_11596558_1.pdf
xxxi. Statements_Account_Last_Four_Numbers_6877_Doc_ID_11605340_1.pdf
xxxii. Statements_Account_Last_Four_Numbers_7115_Doc_ID_11605335_1.pdf
xxxiii. Statements_Account_Last_Four_Numbers_7504_Doc_ID_11596135_1.pdf.

**4. Commercial Datasets:**

a. Center for Research in Security Prices, LLC (CRSP) database.

# Appendix C: Definition of "Coordinated Trading Events"

This Appendix outlines differences between my definition of Coordinated Trading Events and the one provided in the Complaint. For each of the bullet points of my definition below, I add a comment on how it compares with the corresponding bullet point in the definition in the Complaint.

- Two or more accounts at different brokerage firms trade and hold positions in the same exchange-traded stock, on the same day, and during the same period of time;
    - *Comment*: This bullet point is the same as in the Complaint, except I add "at different brokerage firms" for clarification. The Complaint also requires the accounts to be at different brokerage firms.[1]
- The event starts when the first account places an order and ends when all of the involved accounts close out their positions;
    - *Comment*: This bullet point is the same as in the Complaint, except I change "when the first account trades" to "when the first account places an order" because I want to include in an event the orders that have been subsequently canceled; this affects the timing but not the identification of the event. I also delete "(or when the trading day ends)" because my analyses focus on day trading[2] and exclude trades that were closed on a different date than when the corresponding position was open.
- At least one of the accounts behaves as a winner account—an account that has an average order size greater than or equal to 1,000 shares;
    - *Comment*: This bullet point is the same as in the Complaint except I use "average order size" instead of "average transaction size" because I want to include canceled orders in the average size calculation.

[1] See the discussion of helper accounts in the Complaint, ¶17, and below.
[2] See footnote 9.

- At least one of the involved accounts behaves as a helper account—an account that has an average order size of less than 500 shares, for orders preceding the winner account's orders, and is held at a different brokerage firm than the winner account;
  - Comment: This bullet point is the same as in the Complaint except I use "average order size" instead of "average transaction size" because I want to include canceled orders in the average size calculation. I also add "for orders preceding the winner account's orders" because I do not require the transactions that liquidate helper account's positions and that occur after all of the winner account's transactions to be executed in a series of smaller transactions.
- There is at least one instance during the coordinated trade event where the direction of a transaction or series of transactions in the helper account is in the opposite direction from the immediately following transaction(s) in the winner account, and the latter does not lag the helper account's transactions by more than 30 seconds.
  - *Comment*: This is a new bullet point as compared to the definition in the complaint. The first condition ensures I only include strategies that are consistent with coordinated trading behavior. For instance, the following strategy that otherwise may satisfy other criteria for the coordinated trading event is not considered to be a coordinated trading event: the winner account places large buy orders; then the helper account places a series of smaller sell orders; then the winner account closes its position followed by the helper account liquidating its positions.[3] The second condition precludes situations where the winner account's transactions that follow the helper account's transactions are spaced too far apart.

[3] Similarly, the following strategy is not considered to be a coordinated trading event: the winner account places large sell orders; then the helper account places a series of smaller buy orders; then the winner account closes its position followed by the helper account liquidating its positions.

Both conditions make my definition of coordinated trading events more restrictive than the one in the Complaint.